IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MID-TOWN SURGICAL CENTER, L.L.P., | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2620 |
| | § | |
| HUMANA HEALTH PLAN | § | |
| OF TEXAS, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This RICO and ERISA case is before the Court on Defendant Humana Health Plan of Texas, Inc.'s ("Humana" or "Defendant") Motion to Partially Dismiss First Amended Complaint [Doc. # 15] ("Motion").  Plaintiff Mid-Town Surgical Center, L.L.P.'s ("MSC" or "Plaintiff") has filed a Response [Doc. # 17], to which Humana replied [Doc. # 18].  Having reviewed the parties' briefing, the applicable legal authorities, and the relevant evidence of record, the Court **grants in part** and **denies in part** Humana's Motion.

## I.    BACKGROUND

Plaintiff MSC is a surgery center that performs same-day surgical and pain procedures.  Plaintiff's First Amended Complaint [Doc. # 13] ("Complaint"), ¶ 5.  Defendant Humana "issues group health benefits plans," some of which are governed

by the Employee Retirement Income Security Act ("ERISA") and some of which are not.  *Id.*, ¶ 6.

MSC and Humana have not entered into a contract governing the payment of benefits for services that MSC renders to members of a healthcare insurance plan issued by Humana.  *Id.*  When members of a Humana plan obtain services from MSC, MSC is treated as an "out-of-network provider."  *Id.*  Members pay Humana a "hefty premium" for the ability to access out-of-network providers.  *Id.*  Premiums for out-of-network providers are higher because Humana must pay those providers the "usual and customary charges" for those services (rather than a contracted rate).  *Id.*, ¶ 7. Humana processes claims made for services by out-of-network providers similarly to claims made for services by providers with whom Humana has contracted, *i.e.*, "in-network providers."  *Id.*, ¶ 6.  MSC alleges that "Humana has devised an extremely unclear system of payment methodology which seems to be based on a contracted rate or Medicare rate for the policies that have both in-network and out of network benefits and, therefore, Humana is selling a product which is in reality the same product by Humana has packaged it differently."  *Id.*  MSC claims that members of Humana plans are "punished" for choosing to use out-of-network providers in that Humana makes them "financially responsible for a major percentage of the bill by applying an incorrect methodology of payment."  *Id.*

MSC alleges that "Humana conspires with [certain] plan administrators for Humana to sell and for the employers to purchase such health care plans for which Humana knows that it will not be paying the usual and customary rate for out of network providers." *Id.*, ¶ 12. As part of this conspiracy, MSC asserts that plan administrators receive "substantial discounts in their plan premiums." *Id.* MSC further asserts that "[t]his conspiracy is designed to . . . increase the profit received by Humana while at the same time decreasing the premiums that the employer plan administrators will have to pay." *Id.*

During some unspecified time period,[1] MSC provided medical services to members of Humana plans (the "Humana Members").[2] *Id.*, ¶ 8. Prior to rendering services, MSC received verification from Humana that the Humana Members were covered by a Humana health plan and pre-certification from Humana that services to be rendered to the Humana Members were covered by a Humana-issued insurance plan. *Id.* MSC alleges that it would not have provided these services without receiving the verification and pre-certification of the Humana Members' coverage.

---

[1]    MSC states, without further specificity, that "the billings that are at issue in this lawsuit . . . span several years." Complaint, ¶ 12.

[2]    Humana acts as the plan administrator with regard to some of the healthcare insurance plans at issue and as a third-party administrator with regard to other plans at issue. Complaint, ¶ 11. With regard to still other plans at issue, employers of Humana Members act as the plan administrators. *Id.*

*Id.*  MSC also alleges that Humana made material representations in a "Benefit Plan Document booklet" it mailed to MSC that it would "fully reimburse the [out-of-network] provider at the usual and customary or an agreed rate."  *Id.*, ¶ 10.

After rendering services to the Humana Members, MSC submitted bills for these services to Humana totaling $1,705,794.00.[3]  *Id.*, ¶ 9.  MSC alleges that Humana should have paid $923,160.70.  *See id.*  Humana did not pay that amount. For certain services, Humana paid nothing to MSC; in other cases, Humana paid "substantially less than the billed rates for these services."  *Id.*, ¶ 8.  In total, Humana paid MSC $6,619.20 for the services rendered, 0.39% of MSC's billed charges.  *Id.*, ¶ 9.  Of the additional $916,541.50 that MSC alleges Humana owes, $872,331.30 derived from services rendered to patients covered under ERISA plans and $44,210.20 derived from services rendered to two patients covered under non-ERISA, individual insurance plans.  *Id.*  The rates Humana paid are lower than both the rates Humana pays for in-network providers and the Medicare rate.  *Id.*, ¶ 10.

---

[3]     In its Complaint, MSC does not specify the number of Humana Members, nor does MSC provide any other details regarding the services at issue, including when they were rendered.  In subsequent filings, the parties have indicated that twenty-nine patients comprise the pool of Humana Members.  *See* Plaintiff's Examples of Assignments of Benefits [Doc. # 21], at 1; Defendant's Submission Regarding Assignment of Benefits [Doc. # 22], ¶ 7.

MSC administratively appealed Humana's payment determinations and exhausted its administrative remedies.  *Id.*, ¶ 15.  In response to MSC's appeals, Humana provided MSC with a "pre-formatted letter" which explains Humana's decision using the acronym "MAF," or "Maximum Allowable Fee." *Id.*  MSC claims that this term is "not transparent" and is "deceptive."  *Id.*  MSC also alleges that Humana "attempted to force [MSC] to accept this" reduced payment by mailing a "sham form letter" to MSC with regard to each patient's treatment at issue.[4]  *Id.*, ¶ 13.

MSC commenced this lawsuit on September 6, 2013.  Humana moved to dismiss MSC's Original Complaint [Doc. # 7], which the Court denied without prejudice, *see* Minute Entry Order [Doc. # 12].  MSC filed its First Amended Complaint on December 16, 2013.

## II.   LEGAL STANDARD

### A.   Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).   In considering a challenge to subject matter jurisdiction, the district court is "free to

---

[4]     It is unclear from MSC's pleading whether this "sham form," *see* Complaint, ¶ 13, is the same letter that Humana purportedly supplied to MSC in response to MSC's appeals of Humana's benefits determinations, *see id.*, ¶ 15.

weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.* When the court's subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing it. *See Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Id.* The Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2007).

### B. <u>Failure to State a Claim</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a

court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.   ANALYSIS

MSC asserts eight causes of action against Humana: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; (2) violation of Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B); (3) breach of fiduciary duty under ERISA; (4) failure to afford a full and fair review under ERISA; (5) violation of ERISA's claims processing requirements; (6) breach of contract; (7) promissory estoppel; and (8) negligent misrepresentation. Humana seeks dismissal of each of these claims except for MSC's breach of contract claim.

### A.   Violation of RICO (Count One), ERISA Breach of Fiduciary Duty (Count Three), Failure to Provide Full and Fair Review Under ERISA (Count Four), and Violation of ERISA's Claim Procedures (Count Five)

Humana argues that MSC's RICO, ERISA breach of fiduciary duty, failure to provide full and fair review under ERISA, and violation of ERISA's claims

procedures claims must be dismissed for lack of standing.[5]  Humana argues that MSC lacks standing for each of these claims because the Humana Members' putative claims were not expressly assigned to MSC.  The Court agrees.

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010).  In addition to this "constitutional" standing requirement, a party must also show that it has "prudential" standing, which "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

---

[5]     For ease of comprehension, the Court will refer to these claims collectively as the "RICO and non-benefits ERISA claims."

Additionally, a party may obtain standing derivatively from the standing of another party. "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005). Similarly, though the Fifth Circuit has not had occasion to address the assignability of RICO claims, numerous federal courts have concluded that a party may obtain derivative standing through assignment to assert the RICO claim of another party. *See, e.g.*, *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 111-12 (3d Cir. 1993) (Alito, J.); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 400 n.2 (S.D.N.Y. 2013); *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 812 (D.N.J. 2011); *see also, e.g., Nat'l Asbestos Workers Medical Fund v. Phillip Morris, Inc.*, 74 F. Supp. 2d 221, 228 (E.D.N.Y. 1999) (collecting cases).[6]  For a third-party to obtain standing to assert either an ERISA Section 1132(a)(3) claim or a RICO claim, however, the claim(s) must be expressly assigned to the third-party. *See Tex. Life, Accident & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997) ("[O]nly an express and knowing assignment of an ERISA fiduciary

---

[6]     Humana does not appear to contest that the Humana Members can theoretically assign their RICO claims to MSC.

breach claim is valid."); *Lerman*, 10 F.3d at 112 (holding that assignment of a RICO claim must be express).[7]

In response to the parties' briefing on the issue of whether the RICO and non-benefits ERISA claims were properly assigned to MSC, the Court ordered the parties to produce exemplars of each "Assignment of Benefits" that MSC alleges transfers to it the Humana Members' RICO and non-benefits ERISA claims.  *See* Order dated April 7, 2014 [Doc. # 20].   Because these documents were referenced in the Complaint and in Humana's Motion to Dismiss,[8] the Court considers them in analyzing MSC's standing to assert these claims.  *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)) ("The court's review [on a motion to dismiss] is limited to the complaint, any documents attached to the

---

[7]    Courts have held that Section 1132(a)(3) claims premised on a violation other than a breach of fiduciary duty, such as a failure to provide full and fair review or a violation of ERISA's claims procedures, must also be expressly assigned for a third-party to obtain derivative standing to assert those claims.  *See, e.g.*, *In re Wellpoint, Inc. Out–of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 895-99 (C.D. Cal. 2012) (dismissing "failure to provide full and fair review" and "failure to provide accurate records" claims asserted under ERISA for lack of express assignment); *North Cypress Medical Center*, 782 F. Supp. 2d at 300-03 (assuming that express assignment is necessary for claims of failure to provide a full and fair review and violations of claims procedures regulations under ERISA).

[8]    *See* Complaint, ¶¶ 18, 35, 38, 43 ("The Humana members have assigned to [MSC] their claims against Humana in this regard; Motion, at 10 n.3, 12; Reply, at 2 n.1.

complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

MSC provided the Court with three forms, signed by some or all of the Humana Members, that serve as exemplars of the assignment of benefits at issue. *See* Plaintiff's Examples of Assignments of Benefits [Doc. # 21]. The first ("Exhibit 1") is a form that MSC represents to the Court was "signed by all twenty-nine patients before the services at issue were performed." *Id.*, at 1. The assignment provision in Exhibit 1 states:

> I hereby assign payment directly to the surgery center all surgical and/or Medical Benefits otherwise payable to me for its services but not to exceed its charges. Any unpaid deductible and/or estimated co-pay is due and payable the day of surgery. I understand that charges not payable by insurance is my responsibility and all charges are due in full within 90 days from the date of surgery regardless of any insurance pending.

*Id.*, at 3. This assignment references only payment of "surgical and/or Medical Benefits." It does not refer to any RICO, ERISA breach of fiduciary duty, or other non-benefits ERISA claims. Thus, this assignment is insufficient as a matter of law to assign MSC the Humana Members' RICO and non-benefits ERISA claims. *See, e.g.*, *North Cypress Medical Center Operating Co. v. Medsolutions, Inc.*, 2010 WL 4702298, at *2 (S.D. Tex. Nov. 10, 2010) (Miller, J.).

The assignment provision of the second exemplar provided ("Exhibit 2") contains broader language than the assignment provision in Exhibit 1.  Exhibit 2 states, in relevant part:

> In addition to the assignment of the medical benefits and/or insurance reimbursement above, I also assign and/or convey to Mid-Town Surgical Center any legal or administrative claim or chose in action arising under any group health plan, employee benefits plan, health insurance or tortfeasor insurance concerning medical expenses incurred as a result of the medical services I received from the above-named provider (including any right to pursue those legal or administrative claims or chose in action).  This constitutes an express and knowing assignment of Employment Retirement Income Security Act (ERISA) breach of fiduciary duty claims, any other ERISA claims, Racketeer Influenced and Corrupt Organizations Act (RICO) claims and any other legal and/or administrative claims.

Plaintiff's  Examples of Assignments of Benefits [Doc. # 21], at 4.  MSC represents that this form was signed by twelve of the twenty-nine Humana Members, and that the dates of these assignments "range from December 12, 2013 to April 10, 2014." *Id.*, at 1.

These assignments, too, are insufficient to establish MSC's standing to pursue these claims in this case.  It is evident that the twelve Humana Members who signed the form expressly assigned their RICO and non-benefits ERISA claims to MSC.[9]  A

---

[9]    The Court notes that even if this assignment were sufficient to establish MSC's standing here for the twelve Humana Members who signed this form, MSC would not have standing to assert the RICO and non-benefits ERISA claims of the other
(continued...)

party, however, must have standing at the time the complaint was filed in order to sue. *Pluet v. Frasier*, 355 F.3d 381, 385-86 (5th Cir. 2004); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1288 (5th Cir. 1992); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1223-24 (10th Cir. 2011) (holding that standing to assert an ERISA claim pursuant to Section 502(a)(1)(B) is "assessed as of the filing of a complaint"); *Crawford v. Lamantia*, 34 F.3d 28, 32 (1st Cir. 1994) (holding, in the ERISA context, that standing must exist at all stages of a proceeding, including at the time of filing); *cf. Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal." (quoting *Safir v. Dole*, 718 F.2d 471, 481 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1206 (1984))).  To the extent the RICO and non-benefits ERISA claims were expressly assigned based on this form, they were not assigned until, at earliest, December 12, 2013, over three

---

[9]    (...continued)
seventeen Humana Members who did not.

months after MSC filed this lawsuit.  This assignment cannot establish MSC's

standing to assert these claims at the time the suit was filed.

Finally, MSC attaches a third exemplar ("Exhibit 3"), which it represents was

signed by three patients between January 24, 2014, and February 14, 2014.  Exhibit

3 provides:

> In addition to the assignment of the medical benefits and/or insurance reimbursement above,[10] I also assign and/or convey to Mid-Town Surgical Center any legal or administrative claim or chose in action arising under any group health plan, employee benefits plan, health insurance or tortfeasor insurance concerning medical expenses incurred as a result of the medical services I received from the above-named provider (including any right to pursue those legal or administrative claims or chose in action).  This constitutes an express and knowing assignment of ERISA breach of fiduciary duty claims and other legal and/or administrative claims.

Plaintiff's Examples of Assignments of Benefits [Doc. # 21], at 5.  Like the

assignment provision of Exhibit 2, this assignment is insufficient to establish MSC's

standing in this case to assert its RICO and non-benefits ERISA claims.  First, MSC

has represented that these claims, including the ERISA breach of fiduciary duty

claims, were not assigned through this form until, at earliest, January 24, 2014, over

---

[10]     Exhibit 3's medical benefits assignment states: "I, the undersigned, have insurance and/or employee health care benefits coverage and hereby assign and convey directly to the Mid-Town Surgical Center . . . all medical benefits and/or insurance reimbursement . . ." Plaintiff's Examples of Assignments of Benefits [Doc. # 21], at 5.

four months after MSC initiated this lawsuit.  Furthermore, while the Humana Members who signed this form expressly assigned their ERISA breach of fiduciary duty claims, they did not expressly assign their claims of RICO violations, failure to provide full and fair review under ERISA, and violation of ERISA's claim procedures.  Thus, any assignments made by virtue of Exhibit 3 were also insufficient to establish MSC's standing to assert its RICO and non-benefits ERISA claims.

MSC has represented that the Humana Members assigned MSC their RICO and non-benefits ERISA claims through the assignment provisions of these exhibits.  As stated above, none of these assignments are sufficient to confer standing on MSC, at least in this case, to assert these claims.  Accordingly, MSC's RICO (Count One), ERISA breach of fiduciary duty (Count Three), failure to provide full and fair review under ERISA (Count Four), and violation of ERISA's claim procedures (Count Five) claims are dismissed without prejudice.

### B.    Violation of § 1132(a)(1)(B) of ERISA (Count Two)

A participant or beneficiary of an ERISA plan may bring a claim "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  MSC alleges that Humana has failed to pay or has underpaid

benefits MSC is owed under the terms of the Humana Members' plans, and that MSC has lost $872,331.30 as a result.  Complaint, ¶ 20.

MSC's claim to recover benefits under Section 1132(a)(1)(B) must be dismissed, with leave to replead, for two distinct reasons.  First, because MSC's Section 1132(a)(1)(B) claim is derivative of that of the Humana Members, MSC only has standing to assert its claim if the Humana Members who assigned MSC their benefits have suffered an injury-in fact.  *See North Cypress Medical Center Operating Co. v. CIGNA Healthcare*, 2012 WL 8019265, at *7 (S.D. Tex. June 25, 2012) (Ellison, J.) (citing *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 334-35 (5th Cir. 2005)).  MSC has only alleged that it has suffered injury as a result of Humana's failure to pay for the services provided at the rate MSC contends it was owed.  *See* Complaint, ¶¶ 9-10.  MSC has failed to allege, if indeed it is the case, any distinct injury to the Humana Members, such as out-of-pocket losses or personal liability for MSC's charges in the event of Humana's non-payment, that would confer derivative standing on MSC to assert the Humana Members' claims.  *See North Cypress Medical Center*, 2012 WL 8019265, at *7-8.[11]

---

[11]     The Court recognizes that *North Cypress Medical Center* was decided on summary judgment, and that the *North Cypress Medical Center* court specifically noted that it had not dismissed plaintiff's Section 1132(a)(1)(B) claim at an earlier stage because plaintiff had adequately pleaded an injury-in-fact to its patients.  *See North Cypress* (continued...)

Accordingly, MSC has not alleged facts sufficient to show its standing to pursue its Section 1132(a)(1)(B) claim.

Second, MSC fails to state a Section 1132(a)(1)(B) claim against Humana. "[T]o assert a claim for benefits under ERISA, a plaintiff must identify a specific plan term that confers the benefits in question." *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc.*, __ F. Supp. 2d __, 2014 WL 360349, at *5 (N.D. Tex. Feb. 3, 2014) (internal quotations omitted); *see also Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 902 (S.D. Tex. 2013) (Rosenthal, J.) (dismissing plaintiff's Section 1132(a)(1)(B) claim because plaintiff "has failed to identify a plan term that makes its claims eligible for reimbursement"); *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL 5869249, at *2 (N.D. Tex. Nov. 20, 2012) ("A plaintiff who brings a claim for benefits must identify a specific plan term that confers the benefit in question."). MSC refers only generally to "benefits that are due under the terms of the plans." Complaint, ¶ 20. MSC fails to identify any specific plan terms that confer the benefits it seeks.

Furthermore, MSC alleges that Humana had various roles in regard to the healthcare insurance plans at issue: in some cases it acted as plan administrator; in

---

[11]        (...continued)
*Medical Center*, 2012 WL 8019265, at *7-8.  The case at bar differs from that case precisely because MSC's pleadings are deficient in this respect.

other cases it acted as a third-party administrator; and in other cases "the employers of the patients act as the plan administrators," and Humana's role is undefined. Complaint, ¶ 11.  For a claim of denial of benefits under Section 1132(a)(1)(B), "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan[.]"  *Lifecare Mgmt. Servs., LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844 (5th Cir. 2013).  To the extent that Humana does not control administration of a plan at issue in this case and thus did not "excercise[] actual control over the denial," it is not a proper defendant.  *See Electrostim Med. Servs.*, 962 F. Supp. 2d at 903(citing *Lifecare Mgmt.*, 703 F.3d at 845).

For these reasons, MSC's Section 1132(a)(1)(B) claim must be dismissed.  The Court will allow MSC leave to replead this claim to address these deficiencies, provided in can do so within the strictures of Rule 11 of the Federal Rules of Civil Procedure.

### D.    Promissory Estoppel (Count 7) and Negligent Misrepresentation (Count 8)

#### 1.    Preemption

Congress designed ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *see also Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("The

purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."). To protect employee rights under the statute, "Congress included various safeguards to preclude abuse and to completely secure the rights and expectations brought into being by this landmark reform legislation." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (citing S. REP. No. 93-127, p. 36 (1973)). Among these safeguards are two different preemption provisions: 29 U.S.C. § 1132(a) and 29 U.S.C. § 1144(a).[12]  *Id.*

Congress, through Section 1132(a), created a civil enforcement mechanism that allows participants and beneficiaries of an ERISA plan, among others, to seek relief under the statute by bringing an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has read Section 1132 to preempt "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement scheme." *Davila*, 542 U.S. at 210.  This form of preemption is often referred to as "complete preemption."  *See id.* ("[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal

---

[12]    Many decisions refer to these provisions by their place in the ERISA statute, respectively, § 502(a) and § 514(a).

duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).").

Humana asserts that MSC's promissory estoppel and negligent misrepresentation claims are completely preempted. *See* Motion, at 15-16. Humana misunderstands the complete preemption doctrine under ERISA. Complete preemption "is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (citing *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)). The complete preemption doctrine permits removal to federal court of certain state law claims that fall within the ambit of Section 1132(a). *See McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012) ("Unlike ordinary preemption, compete preemption is jurisdictional in nature, and as such it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims."); *see also Lontz v. Tharp*, 413 F.3d 435, 438 (4th Cir. 2005) (Wilkinson, J.) ("The phrase 'complete preemption' has become a term of art. It refers to that 'small category of statutes that . . . authorize removal of actions that sought relief only under state law." (citations omitted)). A claim cannot be

dismissed as "completely preempted" under ERISA. *Loffredo v. Daimler AG*, 500 F. App'x 491, 501 (6th Cir. 2012) (Moore, J., concurring in the judgment) ("Complete preemption under § 1132(a) is not grounds for dismissal . . . If an ostensible state-law claim is in fact an ERISA claim, it cannot be dismissed as preempted by ERISA; that is, ERISA cannot preempt an ERISA claim." (internal citations omitted)). This case, including MSC's state law claims, was originally filed in this Court, and thus complete preemption is inapplicable.

To the extent that Humana intended to assert that MSC's promissory estoppel and negligent misrepresentation claims are preempted by Section 1144(a), *i.e.,* "conflict preemption," that claim fails as well. Section 1144(a) provides that ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ." 29 U.S.C. § 1144(a). To establish conflict preemption, a defendant must prove: "(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990).

The Fifth Circuit dealt with claims nearly identical to those MSC asserts here in *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011).[13]   The plaintiff in that case had alleged, among other things, that the defendant-insurer had made promises to pay for patients' medical bills and had misrepresented that it would "pay customary and reasonable charges" for services that the plaintiff provided.  *Id.* at 380-81.  The Court of Appeals held that the plaintiff's state law claims of promissory estoppel and negligent misrepresentation were not preempted by ERISA.  *Id.* at 383-86.  In so holding, the Court of Appeals noted the alleged misrepresentations in that case "took the form of statements about the extent of coverage available under the ERISA plan."  *Id.* at 384.  Nevertheless, the Court of Appeals stressed:

> The merits of Access's misrepresentation claims do not depend on whether its services were or were not fully covered under the patients' plans.  If the plans provide less coverage than United's agents indicated, Access must still prove that it was reasonable to rely on their statements as representations of how much and under what terms Access could expect to be paid.  If the plans do provide the same level of coverage United indicated, Access may nevertheless seek to prove its misrepresentation claims by showing that United's statements regarding coverage, while accurate, were nevertheless misleading because

---

[13]   The panel's decision in *Access Mediquip* was initially withdrawn.  The Fifth Circuit took *Access Mediquip* en banc and reinstated the panel's decision in full, clarifying its holding in light of other circuit precedent.  *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1467 (2013).

United's agents omitted to mention that, covered or not, Access's services would not be reimbursed. Consultation of the plans' terms is thus not necessary to evaluate whether United's agents' statements were misleading.

*Id.* at 385 (internal citations omitted).

*Access Mediquip* is directly on point. Here, MSC alleges that "Humana made promises to [MSC] itself . . . that Humana would make payment for the services at issue in this lawsuit . . . pursuant to each insured/member's benefits plan." Complaint, ¶ 46. Similarly, MSC alleges that "Humana made false promises and suppled false information and made false representations . . . to [MSC] itself . . . that Humana would make payment for the services at issue in this lawsuit . . . pursuant to each insured/member's benefits plan." *Id.*, ¶ 48. Finally, MSC also alleges that Humana represented in writing, through a "Benefit Plan Document" booklet, that it would reimburse MSC "at the usual and customary or an agreed rate." *Id.*, ¶ 10. These claims are substantially similar to those at issue in *Access Mediquip* and accordingly, under the Fifth Circuit's reasoning in that case, are not preempted.

Humana seeks to distinguish *Access Mediquip* on the grounds that MSC attempts to enforce an alleged promise and misrepresentation to pay "pursuant to the terms of each insured/member's benefit plan," whereas the plaintiff in *Access Mediquip*, in Humana's estimation, pleaded that it was promised payment in the form

of the "reasonable and customary charges." *See* Motion, at 16-17.  This argument is

unavailing.  The *Access Mediquip* court noted the misrepresentations in that case

included reference to "the extent of coverage available under the ERISA plan," but

stated that "the practical implication of [defendant's] statements about coverage"

were that the plaintiff "would be paid reasonable charges for the services it would

provide in connection with the patient's surgeries."  *Access Mediquip*, 662 F.3d at

384.[14]  Similarly, MSC's state law claims do not focus on what it is owed under the

ERISA plans at issue in this case; rather, the state law claims focus on "what

representations [Humana] makes to third parties about the extent to which it will pay

---

[14]     The *Access Mediquip* court noted that the plaintiff alleged the defendant had
represented it would "pay customary and reasonable charges . . . for medically
necessary devices and services."  *Access Mediquip*, 662 F.3d at 381.  The court
construed the plaintiff's misrepresentation claims as a grievance concerning "the
inconsistency between [defendant's] representations and its conduct after [plaintiff]
submitted claims for reimbursement of its services."  *Id.*  More particularly, the court
stated: "It bears emphasis that, fairly construed, [plaintiff's] claims allege that
[defendant's] agents' statements, though superficially about coverage under the plan,
were in their practical context assurances that [plaintiff] could expect to be paid
reasonable charges if it would procure or finance the devices" for which plaintiff
sought recovery."  *Id.*  The court also focused on the unique fact that the plaintiff
alleges it "would never actually be reimbursed when the time came, because
[defendant's] policy underlying the 'XU' code [*i.e.*, a remark code meaning: "This
service is not reimbursable for this provider at this place of service"] required denying
all claims for surgically implanted devices billed by providers who are not surgical
facilities."  *Id.*  In short, the *Access Mediquip* court understood the representations the
plaintiff sought to enforce to be about the statements defendant's agents' made to the
plaintiff concerning reasonable reimbursement for certain services, and not about
coverage of those services under the terms of the patients' ERISA plans.  *See id.* at
385-86.

for their services." *Id.* at 385.  MSC here pleads both that Humana represented it would pay according to the Humana Members' insurance plans and that it would pay a "usual and customary" rate.  *See* Complaint, ¶ 10.  While MSC references the Humana Members' insurance plans in seeking recovery under its negligent misrepresentation and promissory estoppel claims, the essence of these claims, like in *Access Mediquip*, is that Humana represented that it would pay MSC a reasonable rate for the services provided.  Accordingly, ERISA does not preempt MSC's promissory estoppel and negligent misrepresentation claims.

### 2.    Failure to State a Claim

#### a.    Promissory Estoppel

Under Texas law, "[t]he elements of a promissory estoppel claim are: (1) a promise; (2) reliance thereon that was foreseeable to the promisor; and (3) substantial reliance by the promisee to his detriment."  *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 378-79 (Tex. App.-- Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983)).  MSC alleges that Humana "made promises to [MSC] itself . . . prior to the services being performed or provided by [MSC] that Humana would make payment for the services at issue in this lawsuit . . . pursuant to each insured/member's benefits plan."  Complaint, ¶ 46.  MSC further alleges that Humana foresaw reliance on this promise by MSC in that it pre-verified

and pre-certified the medical services as covered by the Humana Members' insurance plans prior to the services being rendered. *Id.* Finally, MSC alleges that it reasonably relied on Humana's promise in that MSC "would not have provided the services at issue in this lawsuit without these promises made by Humana," and that MSC has suffered a "detriment" in that Humana has failed to properly pay for these services. *Id.*

MSC's allegations, taken as true, are sufficient to support a claim of promissory estoppel. As noted above, MSC's promissory estoppel claim seeks to enforce alleged oral promises by Humana to pay MSC for medical procedures at a certain rate. MSC has adequately pleaded facts sufficient to state a claim for relief. *See Mid-Town Surgical Center, LLP v. Blue Cross Blue Shield of Texas, Inc.*, 2012 WL 1252512, at *2 (S.D. Tex. Apr. 11, 2012) (Miller, J.) (denying defendant's motion to dismiss plaintiff's promissory estoppel claim because plaintiff had adequately pleaded facts sufficient to state a claim for relief). Humana's request for additional detail in MSC's Complaint to determine "that the statements, if any, were a promise as opposed to an expression of opinion, an assumption, a personal preference, or a mere guess as to what form might be required," Motion, at 38, asks for more than what MSC must plead under Rule 8. *See* FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is

entitled to relief"); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring "only enough facts to state a claim to relief that is plausible on its face"). Humana's other arguments regarding the invalidity of MSC's claim are better addressed on a motion for summary judgment.

### b.   Negligent Misrepresentation

"Negligent misrepresentation requires proof that: (1) the defendant in the course of his business or a transaction in which he had an interest; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the plaintiff justifiably relied on the information; (5) proximately causing the plaintiff's injury." *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex. App.—Dallas 2007, no pet.); *see also In Re Stonebridge Technologies, Inc.*, 430 F.3d 260, 267 n.4 (5th Cir. 2005).  MSC alleges that Humana "made false promises, provided false information and made false representations to [MSC] itself . . . that Humana would make payment for the services at issue in this lawsuit . . . and that Humana would pay such claims pursuant to each insured/member's benefits plan."  Complaint, ¶ 48.  Furthermore, MSC alleges that Humana misrepresented that "the patients at issue were covered under the healthcare policies (the pre-verification) and that the services were pre-authorized and covered under the terms of the healthcare policies (the pre-certification)."  Complaint, ¶ 49.

MSC also alleges that it justifiably relief on Humana's representations in that it would not have provided the services rendered without Humana having made such representations. *Id.*, ¶ 48. Furthermore, MSC alleges that it has suffered a pecuniary loss because "Humana has breached such promises and representations by failing to pay . . . and/or underpaying the claims submitted by [MSC]." *Id.* Humana argues that this claim must be dismissed because: (a) MSC has failed to allege that Humana supplied "false information;" and (b) MSC has not alleged that "Humana did not exercise reasonable care or competence in obtaining or communicating the information." Motion, at 40.

MSC adequately pleads a plausible claim of negligent misrepresentation. The Court assumes the facts alleged are true, as it must on a motion to dismiss for failure to state a claim. *Twombly*, 550 U.S. at 570. MSC alleges, contrary to Humana's contention, that Humana provided MSC with false information—that is, that the Humana Members were covered under an applicable insurance plan and that Humana would make payment to MSC pursuant to each Humana member's plan. While MSC had not expressly alleged that Humana made false representations "without exercising reasonable care or competence in communicating the information," the Court reasonably infers such an allegation from the Complaint as written. *See Walker v. S. Cent. Bell Tel. Co.*, 904 F.3d 275, 278 (5th Cir. 1990), *superseded on other grounds*

*by statute*, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, *as recognized in CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449 (5th Cir. 2008) ("Generally speaking if the pleadings provide adequate notice, then an inference may be drawn that all the elements of a cause of action exist.  We reiterate: A court must go much further than merely accept . . . the facts of the complaint and not dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." (internal quotations omitted)).  Accordingly, the Court denies Humana's motion to dismiss MSC's negligent misrepresentation claim.

## IV.   <u>CONCLUSION AND ORDER</u>

For the reasons stated, it is hereby

**ORDERED** that Defendant Humana Health Plan of Texas, Inc.'s Motion to Partially Dismiss First Amended Complaint [Doc. # 15] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that Plaintiff Mid-Town Surgical Center's Counts One (violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Three (breach of fiduciary duty under ERISA), Four (failure to afford a full and fair review under ERISA), and Five (violation of ERISA's claims processing requirements) are **DISMISSED without prejudice** for lack of standing.  Plaintiff may reassert these

claims in a proceeding provided it has standing to do so at the time the claims are asserted.  It is further

**ORDERED** that Plaintiff's Count Two (violation of Section 502(a) of ERISA) is **DISMISSED without prejudice**.  Plaintiff may replead this claim in a Second Amended Complaint.  It is further

**ORDERED** that Plaintiff is granted leave to file a Second Amended Complaint on or before **May 16, 2014**.  It is further

**ORDERED** that Plaintiff and counsel may not plead a claim for which Plaintiff has no good faith factual and legal basis.  *See* FED. R. CIV. P. 11(b); 28 U.S.C. § 1927. It is further

**ORDERED** that the pretrial conference in this case scheduled for April 30, 2014, at 2:00 p.m. is rescheduled to **May 28, 2014, at 2:00 p.m.**

SIGNED at Houston, Texas, this 23rd day of **April, 2014.**

Nancy F. Atlas
United States District Judge